

**DATE RECEIVED**

AUG 1 5 2013

**LAW DEPARTMENT**

CORPORATION SERVICE COMPANY®

MWM / ALL
Transmittal Number: 11490671
Date Processed: 08/14/2013

## Notice of Service of Process

| | |
|---|---|
| Primary Contact: | Ms. Garnet Chapin<br>Whirlpool Corporation<br>211 Hilltop Road<br>MD 2114<br>St. Joseph, MI 49085 |

| | |
|---|---|
| Entity: | Whirlpool Corporation<br>Entity ID Number  2580391 |
| Entity Served: | CFD Whirlpool |
| Title of Action: | Natasha Bond vs. Whirlpool |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Other |
| Court/Agency: | Madison County Circuit Court, Tennessee |
| Case/Reference No: | C-13-203 II |
| Jurisdiction Served: | Delaware |
| Date Served on CSC: | 08/12/2013 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | TN Department of State on 08/05/13 |
| How Served: | Certified Mail |
| Sender Information: | Isaac H. Brooks<br>731-215-3829 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). it does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com


EXHIBIT



## State of Tennessee

### Department of State

Division of Business Services
Wm. R. Snodgrass Tower
312 Rosa L. Parks Avenue, 6th Floor
Nashville, Tennessee 37243

8/5/2013
Date

7011200000225390282
Certified Number

File No:      C-13-203

Company:    **CFD WHIRLPOOL**

Name:

Agent/POE:

Address:      2711 CENTERVILLE RD
               WILLINGTON, DE 19808

Country:

RE:    ISAAC AND ETHEL BROOKS

VS:    WHIRLPOOL MAYTAG CORP ET AL.

### Notice of Service

The enclosed summons and attachments are hereby officially served upon you by the Office of the Tennessee Secretary of State pursuant to Tennessee Law. Please refer to the summons and attachments for details concerning the lawsuit filed against you. If you have any questions, please contact the clerk of the court which issued the summons. You can obtain the court's telephone number by calling information (area code) 555-1212. The name of the court and county where the court is located will be on the attached summons.

The summons will either tell you a court date and time at which you must appear to defend yourself or tell you the number of days from the day you are served within which you must file an answer upon the plaintiff's attorney. Failure to appear in court at the time specified or failure to answer the summons within the given time could result in a judgement by default being rendered against you for relief sought in the lawsuit.

The Secretary of State's Office cannot give you legal advice. If you need legal advice, please consult a private attorney.

Sincerely,

Tre Hargett
Secretary of State

enclosures
Initial:  MMH
CC:

SS-4214 (Rev. 3/97)

RDA 1003

| Madison   County | **STATE OF TENNESSEE**<br>**CIVIL SUMMONS**<br>page 1 of 1 | Case Number<br>C-13-203 |
|---|---|---|

**Isaac and Ethel Brooks dba T.O.T.S.**   Vs.   **Whirlpool/Maytag Corp., Janice and Gary Hollingsworth**

Served On:

____CFD Whirlpool____          2711 Centerville Road, Willington, De. 19808

DIV II
COPY

You are hereby summoned to defend a civil action filed against you in Circuit Court, Madison County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the below date, judgment by default may be rendered against you for the relief sought in the complaint.

Issued: _____                      _____
                                                                                                 Clerk / Deputy Clerk

Attorney for Plaintiff:  ___Isaac H. Brooks (Pro Se), 124 Jacob St. Jackson, Tn. 38305___
                                          ___(731) 215-3829___

## NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to  _____,  _____Clerk, _____County

## CERTIFICATION (IF APPLICABLE)

I, _____, Clerk of_____County do certify this to be a true and correct copy of the original summons issued in this case.

Date:_____                      _____
                                                                   Clerk / Deputy Clerk

**OFFICER'S RETURN:** Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows: _____

_____

Date:_____          By:_____
                                                            Officer, Title

**RETURN ON SERVICE OF SUMMONS BY MAIL:** I hereby certify and return that on _____, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____. On _____ I received the return receipt, which had been signed by _____ on _____. The return receipt is attached to this original summons to be filed by the Court Clerk.

Date:_____                      _____
                                                          Notary Public / Deputy Clerk (Comm. Expires _____)

Signature of Plaintiff:_____          Plaintiff's Attorney (or Person Authorized to Serve Process)
                                                                           (Attach return receipt on back)

ADA
IF YOU HAVE A DISABILITY AND
REQUIRE ASSISTANCE PLEASE CALL
(731) 588-3070

*ADA: If you need assistance or accommodations because of a disability, please call _____, ADA Coordinator, at ( ) _____*

RECEIVED TENNESSEE
2013 AUG -2  AM 8:56
STATE
SECRETARY OF STATE
(CHARGE IT)

*Rev. 03/11*

COPY FILED

**IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE**
**AT JACKSON**

JUL 3 0 2013

KATHY BLOUNT, CIRCUIT COURT CLERK

11:57 DEPUTY CLERK
A.M. _____ P.M.

NATASHA BOND, ETHEL and
ISAAC BROOKS, D.B.A. TOTS
      Plaintiff,
      vs.

WHIRLPOOL, MAYTAG, a
Michigan Corporation, JANICE PAGE
HOLLINGSWORTH and GARY
HOLLINGSWORTH
      Defendants.

)
)
)
)
)
)
)
)
)
)
)

Case No. C-13-203
        DIV II

**JURY TRIAL DEMANDED**

## COMPLAINT TO RECOVER IMPROPER PAYMENTS

    Comes now the Plaintiffs Pro Se, and file this Complaint seeking reimbursement of payments made to the Defendants not consistent with agreement/contract and pursuant to R.I.C.O. Act, Maytag/Whirlpool Corporation and its Employee/Agent Janice Page Hollingsworth and Husband Gary Hollingsworth (hereinafter referred to as "Defendants") and in furtherance of same, we allege the following:

### PARTIES

    1.  Plaintiff's, Ethel and Isaac Brooks, is an individual d.b.a. TOTS and other entities with its principal place of business at 124 Jacob, Jackson, Tn. 38305.

    2.  Defendant Whirlpool Corporation is a Michigan corporation with its principal place of business at **North American Appliance Group, Administrative Center, 2000 M 63, Benton Harbor, MI. 49022-2692**.

    3.  Defendant Janice Page Hollingsworth is an individual who (last known) resides at **28 Winchester Cove, Jackson Tennessee 38305** and upon belief Janice Page Hollingsworth and Gary Hollingsworth are husband and wife.

    4.  Defendant, Gary Hollingsworth is an individual who (last known) resides at **28**

Winchester Cove, Jackson Tennessee 38305.

## JURISDICTION

5. This action is brought under the federal Racketeer Influenced and Corrupt Organization ("RICO") statute. 18 U.S.C.1962, 1961 and 1964 et seq., and various other Tennessee statutes and common law doctrine, Jurisdiction is vested in this Court.

6. Because claims brought under Tennessee law are so related to Plaintiffs claims, over which the Court has original jurisdiction, that they form part of the same or controversy under Article III of the United States Constitution, the Court also has jurisdiction over Plaintiffs, Tennessee common law and statutory claims.

7. A substantial part of the events and omissions giving rise to the claims stated herein occurred in this Jurisdiction and all defendants are subject to the personal jurisdiction of this Court. Venue is proper in State Court for the act committed under R.I.C.O. Act and pursuant to 18 U.S.C. $ 1964.

## INTRODUCTORY ALLEGATIONS

8. Isaac Brooks, d.b.a. TOTS, began doing business in 1993 and thereafter became a supplier of Maytag Corporation. At said time, Janice Page Hollingsworth was Maytag's Human Resource Manager/Agent with the responsibility for Isaac Brooks relationship with Maytag and later Whirlpool.

9. Upon information and belief, in or before 2004-2006 Whirlpool Corporation, purchased Maytag Corporation.

10. Throughout the history of said business relationship, Janice Page Hollingsworth made statements to Isaac Brooks demanding kickbacks, and other monetary enumerations.

11. Janice Page Hollingsworth stated that , in exchange for the kickbacks, she would ensure that Isaac Brooks, maintain the business of Maytag and subsequently Whirlpool Corporation and she would protect the plaintiff's working relationship.

12. Janice Page Hollingsworth stated that if Isaac Brooks refused to make the kickback payments she would make sure that Isaac Brooks lost the business of Maytag and Whirlpool.

13. Janice Page Hollingsworth stated that if Isaac Brooks ever reported her conduct to either Maytag's or Whirlpool's management or law enforcement, she would falsely accuse Isaac Brooks of bribery, which would expose Isaac Brooks to criminal prosecution and ensure that Isaac Brooks would be terminated as a Maytag and/or Whirlpool supplier.

14. Because most of its business was related to supplying contract employees and because Isaac Brooks reasonably feared that Janice Page Hollingsworth would make good on the threats, Isaac Brooks made the kickback payments to Janice Page Hollingsworth. Isaac Brooks agreed to make the kickback payments demanded by Janice Page Hollingsworth only because of the economic duress threatened by Janice Page Hollingsworth. Isaac Brooks received no benefit from the kickbacks, other than Janice Page Hollingsworth's purported "protection" from termination as a supplier.

15. Approximately $1,316,500.00 in kickbacks demanded by Janice Page Hollingsworth was paid personally by Isaac Brooks. Pursuant to Janice Page Hollingsworth's direction, however, Isaac Brooks thereafter made payments to her husband, Gary Hollingsworth and placed him on plaintiff's payroll and paid him as if he was an employee of Isaac Brooks, (Mr. Hollingsworth payments were separate from payments to Mrs. Hollingsworth).

16. Upon information and belief, Janice Page Hollingsworth knew and intended that if Isaac Brooks extorted kickback payments were ever discovered by Maytag and/or Whirlpool she would depict the payments as bride payments.

17. During the course of said business relationship, Janice Page Hollingsworth extorted kickbacks from Isaac Brooks in an amount of no less than $1,316,500.00. Pursuant to

Janice Page Hollingsworth instructions, the extorted kickbacks were paid in the form of cash, checks and cashier checks from Isaac Brooks to Janice Page Hollingsworth, purchase of a company for Gary Hollingsworth, casino trips to Tunica, Mississippi, wages to Gary Hollingsworth, Boat house payments, Christmas cash to Janice Page Hollingsworth. Gary Hollingsworth was never an employee of Isaac Brooks.

18. During the course of business, Janice Page Hollingsworth extorted from Isaac Brooks an amount of no less than $1,185,500.00 to Janice Page Hollingsworth, personally and an additional $131,000 kickback were paid in form or wages and other indirect payment made to Gary Hollingsworth as alleged in the preceding # 17 allegation. Defendant's Agent Janice Page Hollingsworth demands were in violation of contract. That these payments were improper, constituting a breach thereof, fraudulent and a breach of her duty.

Plaintiff's asserts it made the following payments:

| DATES | AMOUNT |
|-------|--------|
| 1999 | 38,000.00 |
| 2000 | 81,000.00 |
| 2001 | 94,000.00 |
| 2002 | 86,000.00 |
| 2003 | 161,500.00 |
| 2004 | 254,000.00 |
| 2005 | 247,000.00 |
| 2006 | 231,000.00 |
| 2007 | 124,000.00 |

19. In July 2003, Janice Page Hollingsworth demanded that Isaac Brooks give her $120,000 for a business whereas plaintiff Isaac Brooks tried to dodge her and shortly thereafter she contacted Isaac Brooks and stated "your ass will be out of here if you don't give

me $30,000.00." Reluctantly, Isaac Brooks made the payment, July 31, 2003

20. During August 2004 Janice Page Hollingsworth demanded Isaac Brooks give her a percentage of the business at 3% per week of net profit or Isaac Brooks would be replaced as the supplier. This was done for three (3) years, to the tune of $78,000.00.

21. During October 2007, Isaac Brooks refused to make anymore extortion payments to Janice Page Hollingsworth and stayed away from her. Janice Page Hollingsworth became irate and made good on her threats, (also made good on threats January 2006 we were replaced as supplier until she was paid).

22. Janice Page Hollingsworth, also demanded that Isaac Brooks pay $25,000 each Christmas which Isaac Brooks refused and Janice Page Hollingsworth contacted him and stated " I guess I can call another service." After that Janice Page Hollingsworth was paid the $25,000 for 6 years totaling $150,000.00 beginning December 2001.

23. Isaac Brooks immediately ceased making payments to Janice Page Hollingsworth in October 2007 and on January 8, 2008 Isaac Brooks got information that he was no longer the supplier after meeting with attorneys, Between 5 and 6 pm Isaac Brooks went to meet with Janice Page Hollingsworth and after a brief discussion indicated that he was going to the plant manager. Janice Page Hollingsworth stated, "The plant manager was out of town." Isaac Brooks informed Janice Page Hollingsworth that he would be going to the authorities to report Janice Page Hollingsworth's extortion acts.

24. In essence, Janice Page Hollingsworth replied: "I will be reporting to the proper authorities your bribery and you will be facing criminal charges," thereafter the plaintiff left.

25. Isaac Brooks also feared reporting Janice Page Hollingsworth's conduct directly to law enforcement. Janice Page Hollingsworth had threatened that in response to any report to law enforcement, Janice Page Hollingsworth would claim that the kickbacks were brides, and Isaac Brooks would face prosecution himself.

26. By the fall of 2007, however, Janice Page Hollingsworth's duress and retaliatory

actions had exacted such a toll on Isaac Brooks and causing great distress.

27. Knowing that he and his company were the victims of Janice Page Hollingsworth's extortionist demands and knowing that Janice Page Hollingsworth ability to inflict additional harm was increasing, in 2005 Isaac Brooks decided to report Janice Page Hollingsworth conduct to the Plant Manager, believing that the plant manager and the legal system would protect Isaac Brooks from Janice Page Hollingsworth's continued illegal behavior and attempts to rectify the past wrongs she had committed.

28. On January 8, 2008, Isaac Brooks met with attorney and subsequently informed Janice Page Hollingsworth that he was no longer allowing illegally extorting kickback payments.

29. Isaac Brooks also stated that he was going to the authorities at which time Janice Page Hollingsworth informed Isaac Brooks that his services with Whirlpool was no longer needed.

30. Janice Page Hollingsworth then informed plaintiff, Isaac Brooks that she was informed to let him know that he would be reported to the proper authorities for bribery and face criminal charges.

31. Janice Page Hollingsworth made it known to Isaac Brooks that at all times she controlled his fate with Whirlpool and that if Isaac Brooks wanted to preserve its Maytag/Whirlpool business, it had to make kickback payments to her.

## *RICO CLAIMS*

### COUNT ONE
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATONS ACT
### 18 U.S.C. § 1962(C)

32. Isaac Brooks realleges and restates paragraph 1 through 31.

33, At all relevant times Isaac Brooks, d.b.a. TOTS constituted an "enterprise" within the meaning of 18 U.S.C. §§ 1961 (4) and 1962 (c), in that it was a partnership

(a) Janice Page Hollingsworth is an individual "person" within the meaning of 18 U.S.C. §§ 1961 (3) and 1962 (c), who associated with and/or participated in the conduct of said enterprise's affairs.

(b) Between December 1993 and January 2008, Janice Page Hollingsworth conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961 (1), 1961 (5) and 1962 (c). Janice Page Hollingsworth pattern of racketeering activity consisted of:

(i)   extortion (*see supra*   8-31) that was designed to extract direct or indirect personal rewards from Isaac Brooks, if Isaac Brooks refused to succumb to Janice Page Hollingsworth demands for personal compensation, she would cause Maytag and later Whirlpool to terminate Isaac Brooks or she would engage in retaliatory action (*see supra 21* ) against Isaac Brooks , all or some said acts of extortion were in violation of 18 U.S.C. § 1951; and State Law.

(ii)  Janice Page Hollingsworth knowingly used intimidation and threatens to corruptly persuade Isaac Brooks , or attempted to do so, or engaged in misleading conduct toward Isaac Brooks, with intent to (i) influence, delay, or prevent the testimony of Isaac Brooks in an official proceeding concerning Janice Page Hollingsworth's illegal actions; or (ii) to hinder, delay, or prevent Isaac Brooks communication to a law enforcement officer or judge of the United States information relating to Janice Page Hollingsworth's commission or possible commission of State or a Federal offense/; Janice Page Hollingsworth committed such acts in                    violation of 18 U.S.C. § 1512;

(iii) a scheme to defraud (*see supra*   8-31) that was knowingly and intentionally devised by Janice Page Hollingsworth to obtain Isaac Brooks money or property by means of false or fraudulent pretenses, representations, or promises; and, for the purpose of executing such scheme, Janice Page Hollingsworth placed or foresee ably caused to be place in a post office, or authorized depository for mail, matter that furthered the scheme to defraud (including but not limited to all checks Janice Page Hollingsworth caused Isaac Brooks to issue to Gary Hollingsworth described in  15 & 17 ); Janice Page Hollingsworth committed fraud, in violation of 18 U.S.C. § 1341, each time she used or foreseeably caused the mails to be used to distribute the materials described in paragraphs 18, 19, and 20 and elsewhere.

(iv)  traveling, in interstate and foreign commerce or using the mail and wire or any facility in interstate or foreign commerce with intent to distribute the proceeds of extortion or otherwise promote, manage, establish, or

carry on a scheme to extort and thereafter performed or attempted to perform said acts, in violation of 18 U.S.C. § 1952 and State Law.

These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

34.     In the alternative to paragraph 33, 35 and 36, at all relevant times, some or all of the following individual constituted an "enterprise" within the meaning of 18 U.S.C.§ 1961 (4) and 1962 (c ), in that they were "a group of individuals associated in fact:  Isaac Brooks, d.b.a. TOTS, Maytag and later Whirlpool.

(a) Janice Page Hollingsworth is an individual "person" within the meaning of 18 U.S.C. §§ 1961 (3) and 1962 (c), who associated with and/or participated in the conduct of said enterprise's affairs.

(b)  Between December 1993 and January 2008, Janice Page Hollingsworth conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961 (1), 1961 (5) and 1962 (c ).  Janice Page Hollingsworth pattern of racketeering activity consisted of:

(i)      extortion (*see supra   8-31*) that was designed to extract direct or indirect personal rewards from Isaac Brooks, if Isaac Brooks refused to succumb to Janice Page Hollingsworth demands for personal compensation, she would cause Maytag and later Whirlpool to terminate Isaac Brooks or she would engage in retaliatory action (*see supra 21*) against Isaac Brooks , all or some said acts of extortion were in violation of 18 U.S.C. § 1951;

(ii)     Janice Page Hollingsworth knowingly used intimidation and threatens to corruptly persuade Isaac Brooks , or attempted to do so, or engaged in misleading conduct toward Isaac Brooks, with intent to (i) influence, delay, or prevent the testimony of Isaac Brooks in an official proceeding concerning Janice Page Hollingsworth's illegal actions; or (ii) to hinder, delay, or prevent Isaac Brooks communication to a law enforcement officer or judge of the United States information relating to Janice Page Hollingsworth's commission or possible commission of a Federal offense/; Janice Page Hollingsworth committed such acts in violation of 18 U.S.C. § 1512 and State Law;

(iii)    a scheme to defraud (*see supra   8-31*) that was knowingly and intentionally devised by Janice Page Hollingsworth to obtain Isaac Brooks money or property by means of false or fraudulent pretenses, representations, or promises; and, for the purpose of executing such scheme, Janice Page Hollingsworth placed or foresee ably caused to be place in a post office, or authorized depository for mail, matter that

furthered the scheme to defraud (including but not limited to all checks Janice Page Hollingsworth caused Isaac Brooks to issue to Gary Hollingsworth described in 15 & 17 ); Janice Page Hollingsworth committed fraud, in violation of 18 U.S.C. § 1341, each time she used or foreseeably caused the mails to be used to distribute the materials described in paragraphs 18, 19 and 20 and elsewhere.

(iv)    traveling, in interstate and foreign commerce or using the mail and wire or any facility in interstate or foreign commerce with intent to distribute the proceeds of extortion or otherwise promote, manage, establish, or carry on a scheme to extort and thereafter performed or attempted to perform said acts, in violation of 18 U.S.C. § 1952.

These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

35.   In the alternative to paragraph 33, 34, and 36, at all relevant times, some or all of the following individual constituted an "enterprise" within the meaning of 18 U.S.C. §§ 1961 (4) and 1962 (c ), in that he were "an individual associated in fact".: Isaac Brooks, d.b.a. TOTS.

(a)  Janice Page Hollingsworth is an individual "person" within the meaning of 18 U.S.C. §§ 1961 (3) and 1962 (c), who associated with and/or participated in the conduct of said enterprise's affairs.

(b)  Between December 1993 and January 2008, Janice Page Hollingsworth conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961 (1), 1961 (5) and 1962 (c ). Janice Page Hollingsworth pattern of racketeering activity consisted of:

(i)     extortion (*see supra   8-31*) that was designed to extract direct or indirect personal rewards from Isaac Brooks, if Isaac Brooks refused to succumb to Janice Page Hollingsworth demands fro personal compensation, she would cause Maytag and later Whirlpool to terminate Isaac Brooks or she would engage in retaliatory action (*see supra 21* ) against Isaac Brooks , all or some said acts of extortion were  in violation of 18 U.S.C. § 1951 and State Law;

(ii)    Janice Page Hollingsworth knowingly used intimidation and threatens to corruptly persuade Isaac Brooks , or attempted to do so, or engaged in misleading conduct toward Isaac Brooks, with intent to (i) influence, delay, or prevent the testimony of Isaac Brooks in an official proceeding concerning Janice Page Hollingsworth's illegal actions; or (ii) to hinder, delay, or prevent Isaac Brooks communication to a law enforcement officer or judge of the United States information relating

to Janice Page Hollingsworth's commission or possible commission of a Federal offense/; Janice Page Hollingsworth committed such acts in violation of 18 U.S.C. § 1512;

(iii)   a scheme to defraud (*see supra   8-31*) that was knowingly and intentionally devised by Janice Page Hollingsworth to obtain Isaac Brooks money or property by means of false or fraudulent pretenses, representations, or promises; and, for the purpose of executing such scheme, Janice Page Hollingsworth placed or foresee ably caused to be place in a post office, or authorized depository for mail, matter that furthered the scheme to defraud (including but not limited to all checks Janice Page Hollingsworth caused Isaac Brooks to issue to Gary Hollingsworth described in 15 & 17); Janice Page Hollingsworth committed fraud, in violation of 18 U.S.C. § 1341, each time she used or foreseeably caused the mails to be used to distribute the materials described in paragraphs 18, 19 and 20 and elsewhere.

(iv)   traveling, in interstate and foreign commerce or using the mail and wire or any facility in interstate or foreign commerce with intent to distribute the proceeds of extortion or otherwise promote, manage, establish, or carry on a scheme to extort and thereafter performed or attempted to perform said acts, in violation of 18 U.S.C. § 1952.

These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

36.   In the alternative to paragraph 33, 34, and 36, at all relevant times, some or all of the following individual constituted an "enterprise" within the meaning of 18 U.S.C. §§ 1961 (4) and 1962 (c ), in that he were "an individual associated in fact".: Janice Page Hollingsworth and Gary Hollingsworth.

a) Janice Page Hollingsworth is an individual "person" within the meaning of 18 U.S.C. §§ 1961 (3) and 1962 (c ), who associated with and/or participated in the conduct of said enterprise's affairs.

(b) Between December 1993 and January 2008, Janice Page Hollingsworth conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961 (1), 1961 (5) and 1962 (c ). Janice Page Hollingsworth pattern of racketeering activity consisted of:

(i)   extortion (*see supra   8-31*) that was designed to extract direct or indirect personal rewards from Isaac Brooks, if Isaac Brooks refused to succumb to Janice Page Hollingsworth demands fro personal compensation, she would cause Maytag and later Whirlpool to terminate Isaac Brooks or she would engage in retaliatory action (*see*

*supra 21* ) against Isaac Brooks , all or some said acts of extortion were in violation of 18 U.S.C. § 1951;

(ii)   Janice Page Hollingsworth knowingly used intimidation and threatens to corruptly persuade Isaac Brooks , or attempted to do so, or engaged in misleading conduct toward Isaac Brooks, with intent to (i) influence, delay, or prevent the testimony of Isaac Brooks in an official proceeding concerning Janice Page Hollingsworth's illegal actions; or (ii) to hinder, delay, or prevent Isaac Brooks communication to a law enforcement officer or judge of the United States information relating to Janice Page Hollingsworth's commission or possible commission of a Federal offense/; Janice Page Hollingsworth committed such acts in violation of 18 U.S.C. § 1512;

(iii)   a scheme to defraud (*see supra   8-31*) that was knowingly and intentionally devised by Janice Page Hollingsworth to obtain Isaac Brooks money or property by means of false or fraudulent pretenses, representations, or promises; and, for the purpose of executing such scheme, Janice Page Hollingsworth placed or foresee ably caused to be place in a post office, or authorized depository for mail, matter that furthered the scheme to defraud (including but not limited to all checks Janice Page Hollingsworth caused Isaac Brooks to issue to Gary Hollingsworth described in 15 & 17 ); Janice Page Hollingsworth committed fraud, in violation of 18 U.S.C. § 1341, each time she used or foreseeably caused the mails to be used to distribute the materials described in paragraphs 18, 19, and 20 and elsewhere.

(iv)   traveling, in interstate and foreign commerce or using the mail and wire or any facility in interstate or foreign commerce with intent to distribute the proceeds of extortion or otherwise promote, manage, establish, or carry on a scheme to extort and thereafter performed or attempted to perform said acts, in violation of 18 U.S.C. § 1952.

These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

37.   At all relevant times, the enterprises alleged in paragraph 33 – 36 *(supra)* were engaged in, and their activities affected, interstate commerce and foreign commerce.

38.   All of the predicate acts described in paragraph 33 – 36 (*supra*) were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962 (c ), in that their common purpose was to extort and defraud Isaac Brooks, their common result was to extort and defraud Isaac Brooks of money; Janice Page Hollingsworth and Gary Hollingsworth each personally or through their agents, directly, or indirectly, participated in

all of the acts and employed the same or similar methods of commission; Isaac Brooks was

the victim of the acts of racketeering; and/or the acts of racketeering were otherwise

interrelated by distinguishing characteristics and were not isolated events.

39   All of the predicate acts described in paragraphs 33 – 36 (*supra*) were

continuous so as to form a pattern of racketeering activity in that:

a)   Janice Page Hollingsworth engaged in the predicate acts over a substantial period of time; or

b)   The patterns of racketeering activity engaged in by Janice Page Hollingsworth continues or threatens to continue because the such conduct has become a regular way of conducting Janice Page Hollingsworth's on-going business activities.

40.   As a direct and proximate result of, and by reason of the activities of Janice

Page Hollingsworth and her conduct in violation of 18 U.S.C. §§ 1962 (c ), Isaac Brooks have

been injured in his business or property, within the meaning of 18 U.S.C. § 1964 (c ).  Among

other things Isaac Brooks have suffered damages to the extent Janice Page Hollingsworth

extorted kickback payments from Isaac Brooks.  Isaac Brooks is therefore. Entitled to recover

threefold damages he has sustained together with the cost of the suit, including reasonable

attorneys' and experts' fees.

## <u>COUNT TWO</u>
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## 18 U.S.C. § 1962(C)

41. Isaac Brooks realleges and restates paragraph 1 – 40.

42. At all relevant times, some or all of the following individuals constituted an

"enterprise" within the meaning of 18 U.S.C. §§ 1961 (4) and 1962 (c) , in that they were "

individuals associated in fact": Janice Page Hollingsworth and Gary Hollingsworth.

(a) Gary Hollingsworth is an individual "person" within the meaning of 18 U.S.C. §§ 1961 (3) and 1962 (c), who associated with and/or participated in the conduct of said enterprise's affairs.

(b)   Between December 1993 and January 2008, Gary Hollingsworth
conducted, participated in, engaged in, conspired to engage in, or aided and
abetted, the conduct of the affairs of the enterprise through a pattern of
racketeering activity within the meaning of 18 U.S.C. §§ 1961 (1), 1961 (5)
and 1962 (c ).

Gary Hollingsworth pattern of racketeering activity consisted of:

(i)     extortion (*see supra 8-31*) that was designed to extract direct or
indirect personal rewards from Isaac Brooks, if Isaac Brooks refused to
succumb to Janice Page Hollingsworth demands for personal
compensation, she would cause Maytag and later Whirlpool to
terminate Isaac Brooks or she would engage in retaliatory action (*see
supra 21*) against Isaac Brooks, all or some said acts of extortion were
in violation of 18 U.S.C. § 1951;

(ii)    Janice Page Hollingsworth knowingly used intimidation and threatens
to corruptly persuade Isaac Brooks , or attempted to do so, or engaged
in misleading conduct toward Isaac Brooks, with intent to (i) influence,
delay, or prevent the testimony of Isaac Brooks in an official
proceeding concerning Janice Page Hollingsworth's illegal actions; or
(ii) to hinder, delay, or prevent Isaac Brooks communication to a law
enforcement officer or judge of the United States information relating
to Janice Page Hollingsworth's commission or possible commission of
a Federal offense/; Janice Page Hollingsworth committed such acts in
violation of 18 U.S.C. § 1512;

(iii)   a scheme to defraud (*see supra   8-31*) that was knowingly and
intentionally devised by Gary Hollingsworth to obtain Isaac
Brooks money or property by means of false or fraudulent pretenses,
representations, or promises; and, for the purpose of executing such
scheme, Gary Hollingsworth placed or foreseeably caused to be
place in a post office, or authorized depository for mail, matter that
furthered the scheme to defraud (including but not limited to all checks
Janice Page Hollingsworth caused Isaac Brooks to issue to Gary
Hollingsworth described in 15 & 17 ); Janice Page Hollingsworth
committed fraud, in violation of 18 U.S.C. § 1341, each time she used
or foreseeably caused the mails to be used to distribute the materials
described in paragraphs 18, 19, and 20 and elsewhere.

(iv)    traveling, in interstate and foreign commerce or using the mail and wire
or any facility in interstate or foreign commerce with intent to distribute
the proceeds of extortion or otherwise promote, manage, establish, or
carry on a scheme to extort and thereafter performed or attempted to
perform said acts, in violation of 18 U.S.C. § 1952.

These acts all occurred after the effective date of RICO and more than two such acts occurred

within ten years of one another.

43.   At all relevant times, the enterprise alleged in paragraph 42 (*supra*) was engaged

in, and their activities affected, interstate commerce and foreign commence.

44. All of the predicate acts described in paragraph 42 (*supra*) were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c ), in that their common purpose was to extort and defraud Isaac Brooks; their common result was to extort and defraud Isaac Brooks of money;  Janice Page Hollingsworth and Gary Hollingsworth, each personally or through their agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission;  Isaac Brooks was the victim of the acts of racketeering, and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

45. All of the predicate acts described in paragraph 42 (*supra*) were continuous so as to form a pattern of racketeering activity in that Gary Hollingsworth engaged in the predicate acts over a substantial period of time.

46. As a direct and proximate result of, and by reason of, the activities of Gary Hollingsworth and his conduct in violation of 18 U.S.C. §§ 1962(c ), Isaac Brooks have been injured in his business or property, within the meaning of 18 U.S.C. § 1964(c ).  Among other things Isaac Brooks have suffered damages to the extent Janice Page Hollingsworth extorted kickbacks payments from Isaac Brooks.  Isaac Brooks are, therefore, entitled to recover threefold the damages they have sustained together with the cost of this suit, including reasonable attorney's and expert's fees.

## COUNT THREE
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## 18 U.S.C. § 1962(d)
### (Conspiracy – Gary Hollingsworth)

47. Isaac Brooks realleges and restates paragraph 1 through 46.

48. In the alternative to Count Two, Gary Hollingsworth conspired with Janice Page Hollingsworth to conduct or participate, directly or indirectly, in the conduct of the affairs of

the enterprises through a pattern of racketeering activity (see supra 33-36) in violation of 18

U.S.C. § 1962(d). In particular Gary Hollingsworth intended to further an endeavor of Janice

Page Hollingsworth which, if completed, would satisfy all of the elements of a substantive

RICO criminal offense and adopted the goal of furthering or facilitating the criminal

endeavor.

49. Isaac Brooks were injured by Gary Hollingsworth's overt acts that are acts of

racketeering or otherwise unlawful under the RICO statute:

(a)    a scheme to defraud (see supra 8-31) that was knowingly and
intentionally devised by Janice Page Hollingsworth and furthered by Gary
Hollingsworth to obtain Isaac Brooks money or property by means of false or
fraudulent pretenses, representations, or promises; and, for the purpose of
executing such scheme, Gary Hollingsworth placed or foreseeably caused to be
place in a post office, or authorized depository for mail, matter that furthered
the scheme to defraud (including but not limited to all checks Janice Page
Hollingsworth caused Isaac Brooks to issue to Gary Hollingsworth described
in 15 & 17 ); Gary Hollingsworth committed fraud, in violation of 18 U.S.C. §
1341, each time she used or foreseeably caused the mails to be used to
distribute the materials described in paragraphs 18, 19, and 20 and elsewhere.

(b)  knowingly executing, or attempting to execute, a scheme or artifice to
obtain money under the custody of control of a financial institution by means
of false or fraudulent pretenses or representations (including but not limited to
all checks endorsed by Gary Hollingsworth described in 15 & 17 and Isaac
Brooks payment from his personal funds, (described 18), in violations of 18
U.S.C. § 1344 and State Law.

(c ) traveling, in interstate and foreign commerce or using the mail and wire
or any facility in interstate or foreign commerce with intent to distribute the
proceeds of extortion or otherwise promote, manage, establish, or carry on a
scheme to extort and thereafter performed or attempted to perform said acts, in
violation of 18 U.S.C. § 1952.

50. a direct and proximate result of, and by reason of the activities of Gary

Hollingsworth and his conduct in violation of 18 U.S.C. §§ 1962 (c ), Isaac Brooks have been

injured in his business or property, within the meaning of 18 U.S.C. § 1964 (c ). Among

other things Isaac Brooks have suffered damages to the extent Janice Page Hollingsworth

extorted kickback payments from Isaac Brooks. Isaac Brooks is therefore. Entitled to recover

threefold damages he has sustained together with the cost of the suit, including reasonable

attorneys' and experts' fees.

## COUNT FOUR
### NEGLIGENT SUPERVISION
### (WHIRLPOOL)

51. Isaac Brooks realleges and restates paragraph 1 through 50.

52. Whirlpool had a duty to exercise reasonable care in the supervision of Janice Page Hollingsworth.

53. Whirlpool breached its duty to supervise Janice Page Hollingsworth, by among other things:

    (a) failing to respond reasonably to Isaac Brooks disclosures in February 2008 and
    (b) 2005 that Janice Page Hollingsworth had been extorting kickbacks from Isaac Brooks and

    (b) failing to terminate Janice Page Hollingsworth after knowledge of said illegal acts Became known

54. Whirlpool breached its duty to supervise Janice Page Hollingsworth by, among other things, failing to enact reasonable measures to ensure that supervisory employees would not be allowed to orchestra a scheme to demand and extort kickbacks from suppliers.

55. As a direct and proximate result of Whirlpool negligent supervision, or breach of its duty to supervise, Isaac Brooks have incurred and/or will incur loss and damages in excess of one million dollars ($1,000,000.00).

56. Whirlpool failure to adequately supervise Janice Page Hollingsworth, among others, was so grossly negligent as to indicate a wanton disregard for the rights of Isaac Brooks. As a result, Isaac Brooks entitled to an award of punitive damages against Whirlpool.

## COUNT FIVE
### NEGLIGENT RETENTION
### (WHIRLPOOL)

57. Isaac Brooks realleges and restates paragraph 1 through 56.

58.  Whirlpool knew or should have known that Janice Page Hollingsworth was extorting kickbacks from Whirlpool suppliers and, thus had a particular unfitness for the position of Whirlpool's Human Resource Manager so as to create a danger of harm to Isaac Brooks and other Whirlpool suppliers.

59.  Janice Page Hollingsworth unfitness was known or should have been known by Whirlpool, as of February 2008 and at all times thereafter; nonetheless, Janice Page Hollingsworth was retained as HR Manager for Whirlpool.

60.  As a direct and proximate result of Whirlpool's negligent retention of Janice Page Hollingsworth, Isaac Brooks have incurred and/or will incur loss and damages in excess of one million ($1,000,000.00).

61.  Whirlpool's retention of Janice Page Hollingsworth after February, 2008 was so grossly negligent as to indicate a wanton disregard for the rights of Isaac Brooks.  As a result, Isaac Brooks is entitled to an award of punitive damages against Whirlpool.

## ___NON – RICO CLAIMS___

### COUNT SIX
### BREACH OF CONTRACT

62.  The business relationship between the parties to wit:  Isaac Brooks, d.b.a. TOTS, Janice Page Hollingsworth as Human Resource Manager/Agent for Maytag/Whirlpool and the Whirlpool Corporation was pursuant to written contract executed by the parties on December 9, 2004, with an expiration date of July 31, 2006.

63.  Though said contract contained a purported expiration date of July 31, 2006 at all times up to and including January, 2008, the parties operated pursuant to the terms of the contract.

64.  One of the terms of the contract required 60 day notice before either party could terminate the contract (*article IV #2 attached to complaint*).

65. Defendants on January 8, 2008 replaced Plaintiff as supplier without giving the required notice as stated in the contract agreement thereby causing a breach of contract.

66. Plaintiff were invoicing at a rate of $60,000.00 weekly for eight (8) weeks totaling $480,000.00.

67. Defendants, Whirlpool did not provide the payments to the Federal Government for 940 and 941 and all other taxes as required by the agreement (*article VIII #2 pg3*) causing a breach totaling $3,400,000.00 (see attached agreement authenticated by forensic expert).

68. Plaintiffs assert it has caused great harm to the business of plaintiff due to defendant's actions.

**WHEREFORE,**   Plaintiffs Isaac Brooks demand trial by jury and judgment from the Court as follows:

1. To award damages against Janice Page Hollingsworth, Gary Hollingsworth, and Whirlpool, jointly and severally, for a sum of money equal to the amount of damages and/or looses Isaac Brooks have sustained or will Sustain;

2. To treble the amount of said damages pursuant to 18 U.S.C. § 1964(c);

3. To award punitive damages pursuant to Tennessee common law;

4. To award damages for the breach of contract by defendant Janice Page Hollingsworth and Whirlpool Corporation in the amount of $3,880,000.00.;

5. To award prejudgment interest on the amount of damages and/or losses that Isaac Brooks have sustained;

6. To award all costs of litigation incurred by Isaac Brooks, including its reasonable attorneys' fees and experts' fees, pursuant to 18 U.S.C. § 1964(c) and Tennessee statute;

7. To award such other and further relief as this Honorable Court deems just and

equitable.


July 30, 2013


Isaac H. Brooks
 pro se
124 Jacob St.
Jackson, TN  38305
Telephone (731) 215-3829
Email:  Ike.brooks1@yahoo.com



# SERVICES AGREEMENT
## BY AND BETWEEN IKE BROOKS DBA
## TOTS AND MAYTAG CORP.

## TERMS AND CONDITIONS

**THIS AGREEMENT** ("Agreement") is made and entered into this 9  the day of December 2004 by and between _____Ike Brooks_____ (" ___TOTS___ ") and ____Maytag____ (" _____"), on behalf of itself, as listed on **Addendum A**(Collectively, the "Provider").

**WHEREAS,** __Maytag__ desires to engage the services of __TOTS__ to render certain Recruitment, employment placement, temporary services, and pre-employment screening of temporary employees and applicants for __Assembly__ positions at the __Maytag__ facility located at 2500 Dr. F.E. Wright Drive Jackson, TN 38305.

**WHEREAS,** __Maytag__ agrees that contract with __TOTS__ does not expire until this _31_ the day of July 2006.

**WHEREAS,** the provider desires to provide certain Services for employees and applicants of __TOTS__ .

**NOW, THEREFORE,** for and in consideration of the above premises, the mutual covenants hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged it is hereby agreed by and between the parties as follows:

## ARTICLE I. __TOTS__ 'S RESPONSIBILITIES

1. *Generally.* __TOTS__ will recruit, interview, select, hire and assign employees who, in __Maytag__ 's judgment, are best qualified to perform the services described in Addendum B. As the employer, __TOTS__ , will: (i) maintain all necessary personnel and payroll records for its employees; (ii) calculate their wages and taxes and other government mandates charges, if any; (iii) pay net wages and fringe benefits, if any (i.e., vacation and holiday pay plus other(s) specified in **Addendum B**), directly to its employees' (iv) provide for liability and fidelity insurance as specified in Section V below; and (v) provide worker's compensation insurance in amounts as required by law.

2. *Compliance.* In connection with performance of this Agreement, ___TOTS___ will comply with all laws, regulations, and orders, to the extent applicable to __Maytag__ including, equal opportunity employment laws and regulations, the Fair Labor Standards Act, and the Immigration Reform and Control Act.

3. Employees on Assignment. The employees assigned to __Maytag__ under this Agreement shall remain employees of __TOTS__ . __TOTS__ 's employees shall not be entitled to participate in any of __Maytag__ and /or Maytag Corporation's employee

benefit plans, including pension, 401 (k), discount stock purchase, retirement, deferred compensation, welfare, insurance, disability, bonus, vacation pay, severance pay plans, and other similar plans, programs, and agreements, whether reduced to writing or not. As a condition of their assignment to __TOTS__ , __TOTS__ will require its employees to acknowledge in writing the application of the terms of this Section.

4.  Secondary Suppliers. __TOTS__ may, at this option, use secondary suppliers to provide certain of the services under this Agreement.

## ARTICLE II.  MAYTAG'S RESPONSIBILITES

__Maytag__ agrees to utilize provider for the Covered Services hereunder.

__Maytag__ covenants and agrees to:

1.  Make best faith to utilize Provider for recruitment and placement of temporary employees.

2.  Compensate Provider for Covered Services in accordance with Article III and VIII.

## ARTICLE III BILLING, REIMBURSEMENT AND PERSONNEL RECORDS

1.  __Maytag__ agrees to reimburse the Provider as set forth hereafter in this Agreement. (See **Addendum C** for "Reminbursement Terms"). If the Provider agrees to the reimbursement terms, then the Provider must accept reimbursements as payment in full for Covered Services rendered or provided. __Maytag__ shall be responsible for all other billing or fees stipulated in Article VIII Number 2.

2.  The Provider agrees to send all invoices for Covered Services rendered to Covered Persons to __Maytag__ according to the terms set forth in **Addendum D** entitled "Invoice Specifications."

3.  The Provider shall prepare and maintain personnel, financial and other records or data with respect to applicants and temporaries that the Provider typically prepares and maintains on behalf of __TOTS__ 's employees. Such records shall be maintained in accordance with prudent record keeping procedures as required by applicable federal and state law.

## ARTICLE IV.  TERM AND TERMINATION

1.  This Agreement shall become effective upon signing and shall continue for a period of two (2) year or until terminated as hereinafter provided.

2.  Either party may terminate this Agreement at any time, if services rendered by Provider __Maytag__ appears to be incapable of meeting __TOTS__ needs, by giving sixty (60) days prior written notice to the other party.

3.  Notwithstanding the notice provision in paragraph 2 above, this Agreement shall terminate automatically upon notice to __TOTS__ from __Maytag__ in the event the

Provider becomes incapable of rendering services; or __TOTS__ fails to maintain valid insurance in the amounts required by this Agreement.

4. Termination of the Agreement shall not affect any rights or obligations hereunder which shall have previously accured, or shall thereafter arise with respect to any occurrence prior to termination, and such rights and obligations shall continue to be governed by the terms of this Agreement.

## ARTICLE V. INSURANCE COVERAGE AND INDEMNIFICATION

1. __TOTS__ shall obtain, at Provider's cost, and keep in force professional and general liability insurance in an amount not less $2,000,000 per occurrence and $4,000,000 in the aggregate and Errors and Omissions coverage in an amount not less than $2,000,000 per claim and in the aggregate.

2. __Maytag__ shall obtain, at Provider's cost, and keep in force Workers' compensation coverage with statutory limits and in compliance with all states where services of this contract may be provided. Coverage will include an "alternate employer" endorsement in favor of __Maytag__. __TOTS__ will indemnify __Maytag__ for all workers' compensation costs pertaining to __TOTS__ employees working for __Maytag__.

1. __Maytag__ shall obtain, at Provider's cost, and keep in force Employers Liability with limits of at least $500,000 per accident, $500,000 per disease, per employee and $500,000 per disease, aggregate.

2. __TOTS__ shall obtain, at Provider's cost, and keep in force Crime insurance coverage in a minimum amount of $1,000,000 covering all employees of the Provider.

3. The Provider shall give __Maytag__ at least thirty (30) days advance notice of the amendment, cancellation or modification of such any such insurance policy. All required insurance shall provide for waivers of subrogation by the Provider and any insurer. Required insurance shall by primary to any carried by __TOTS__/Maytag which shall be excess and non contributory. All of Provider's policies shall be written by insurers having an A.M. Best's Rating of at least A VIII.

4. Upon execution of this agreement, __TOTS__ shall deliver to __Maytag__ insurance certificates evidencing that the required insurance is in force.

5. In the event that either party terminates this Agreement for any reason whatsoever, each party agrees to maintain professional and general liability insurance in the amounts required above for all services provided to until the statutes of limitation expire for the filing of claims.

6. Neither __Maytag__ nor __TOTS__ nor any of their respective officers, employees or agents shall be liable to third parties for any act or omission of the other party, their officers, employees or agents. Each party agrees to indemnify and hold the other party

and its directors, officers, employees and agents, harmless from and against any claim, loss, damage or expense including reasonable attorney's fees for which such party becomes liable due to the acts or omissions of the other.

7.  __TOTS__ indemnifies __Maytag__ for all workers' compensation claims pertaining to their employees, temporary employees or otherwise working for __T.O.T.S.__ for __Maytag__ . *This clause shall survive the termination of the Agreement.*

## ARTICLE VI. EMPLOYEE OVERTIME

Except as otherwise specified, the pricing [provided in Exhibit A presumes that all assigned employees are "nonexempt" as that term is defined in the Fair Labor Standards Act. The pricing provided in Exhibit A does not contemplate nonexempt __TOTS__ employees (as "nonexempt employee" is defined in the Fair Labor Standards Act) working overtime. If such employees work more than forty (40) hours in any one of __Maytag__ work week (seven consecutive twenty-four-hour periods as established by the local __Labor__ office), Customer will pay __TOTS__ for the additional hours at a rate of one and one-half times the employees straight-time bill rate (the overtime bill rate). The overtime rate will also apply, when required by a government contract or applicable law or regulation, for work in excess of eight (8) hours in any one-day.

## ARTICLE VII. AMENDEMENT

This Agreement may only be amended by a mutual written agreement of the parties and will be effective only if in writing and signed by __TOTS__ and __Maytag__ .

## ARTICLE VIII. GENERAL PROVISIONS

This Agreement is subject to the following general provisions:

1.  Non-Exclusivity as to Provider. This Agreement is non-exclusive as to the Provider and, therefore, __Maytag__ acknowledges that __TOTS__ may contract with other employers, provider organization, or other participating provider arrangements.

2.  Independent Contractor. None of the provisions of this Agreement are intended to create or shall be deemed or construed to create any relationship between the parties hereto other than that of independent entities contracting with each other hereunder solely for the purpose of effecting the provisions of this Agreement.

    Consequently, __TOTS__ 's employees, agents, and temporaries shall not be entitled to any benefits afforded __Maytag__ employees. This includes any and all health and welfare, retirement, pension, and insurance benefits. __Maytag__ shall have no responsibility for the payment of any state, and local taxes or other contributions imposed or required under unemployment, and workers compensation with respect to Provider who works for __TOTS__ under this

Agreement. Provider agrees to pay all the applicable foregoing insurance coverage, contributions, and secure all required immigration-related documents and hold __Maytag__ liable if Provider fails to pay such amounts or secure proper documents and recovery of monies or assessment of fines is sought by the Internal Revenue Service or any other agency. Upon plan of action between __Maytag__ and Provider, __Maytag__ shall be responsible for federal taxes, 940's, 941's, etc... Certificates of worker's compensation will be provided by Provider before any covered services are performed. This clause shall survive the termination of this Agreement.

3. Notices. All notices, payments, and others communications required or permitted under this Agreement shall be deemed given and received when delivered in person, when delivered to an overnight courier, or two days after mailing if sent by first class United States mail, postage prepaid, certified with return receipt requested, and addressed:

To MAYTAG at: 2500 Dr. F.E. Wright Drive
Jackson, TN 38305

To the Provider at: 107 Southwind Drive
Jackson, TN 38305

5. Confidentiality and Nondisclosure. The Provider and __TOTS__ mutually agree to hold in trust and confidence all information obtained directly or indirectly in or through the files or records of __TOTS__, or disclosed in connection with this Agreement, and to disclose and use such information only in connection with and to the extent necessary in performing the services required by this Agreement. The terms of this Agreement are confidential.

6. Severability. If any provision or clause of this Agreement is held invalid, such invalidity shall not affect other provisions that can be given effect without the invalid provision, and to this end to the provisions of this Agreement are declared to be severable.

7. Governing Law. The construction and interpretation of this Agreement shall be governed By the laws of the State of Iowa.

8. Binding Effect. This Agreement shall be binding upon and shall inure to the benefit of __TOTS__ and __Maytag__ and their respective successors, but neither this Agreement nor any rights hereunder may be assigned by __Maytag__ or __TOTS__ without the prior written consent of the other.

9. Entire Agreement. This Agreement constitutes the entire Agreement between the parties and supersedes all prior agreements and understandings between them. There are no agreements or understandings between the parties concerning this Agreement which are not fully set forth herein.

10. Waiver. The failure of either party to enforce, at any time or for any period of time, any one or more of the provisions of this Agreement, shall not constitute a waiver thereof or of the right of either party thereafter to enforce each and every provision hereof.

11. Section Headings. The Section headings of this Agreement are for convenience of this Agreement

12.   Incorporation of Addendums. The Addendums attached hereto are incorporated herein by reference and made a part of this Agreement.

13.   Interpretation. Neither __Maytag__ nor the Provider shall be deemed the drafter of this Agreement. Both parties have freely engaged in negotiating this Agreement and all of The provisions hereof. If this Agreement is ever interpreted or construed by a court of Law, both parties agree that such court shall not construe this Agreement against either Party based solely on who is the drafter.

14.   Counterparts. This Agreement may be executed in one or more counterparts, each of Which shall be deemed an original, but all of which together shall be one and the same instrument.

**IN WITNESS WHEREOF,** and intending to be legally bound hereby, the parties hereto have executed this Agreement as of the date and year indicated below.

Maytag Corporation Jackson Dishwashing Products:
[Company Name]

By: _Janice Page Hollingsworth_

Name: _JANICE PAGE HOLLINGSWORTH_

Title: _MGR., HUMAN RESOURCES_

Date: _12/9/04_


Temp Owned Temporary Service (T.O.T.S.)
[Company Name]

By: _____

Name: _IKE BROOKS_

Title: _Chief Executive Officer (CEO)_

Date: _Dec 9, 2004_

## ADDENDUM A

**Provider:**     Temp Owned Temp Owned Temporary Service
(T.OTS)

**Phone Number:**     (731) 668-7091

**Fax Number:**     (731) 664-3172

**Tax Identification Number:** 62-1549093

## ADDENDUM B

### Covered Services/Staffing Process

### Covered Services

TOTS offers a flexible staffing resource capable of handling staffing fluctuation that is created by peak periods, special projects, and short shifts that cause work load to increase beyond the capabilities of the permanent staff while controlling cost.

#### *On-Site Program*

Based on a client's workforce staffing needs at a particular work site or office location, TOTS designs and implements comprehensive on-site staffing services.

This program is design for additional support for HR staff and supervisors while obtaining a continuous quality improvement program

#### *On-Site Staffing*

On-site services, sometimes referred to as vendor-on-premise, is the staffing solution for mid-size to large companies.

This is an effective way to efficiently manage the part-time or full-time temporary workforce while reducing customer cost and obtaining quality customer service.

In addition to allowing the HR Department the resources to focus on and promote internal HR programs, while maintaining complete control of all staffing needs.

### Staffing Process

#### *Recruiting/Selection*

Throughout the recruiting process, TOTS adheres to explicit procedures for EEO and ADA compliance. TOTS does not and will not accept bias toward any prospective employee on the basis of race, color, age, sex, religion, martial status, national origin, veteran status or disability.

TOTS is comprised of a team of experienced professionals, knowledgeable and trained to interview and select qualified candidates for complex and exacting requirements.

#### *Pre-Assignment Requirement*

### Each applicant must meet the following qualifications:

- ✓ Complete two (2) years of verifiable manufacturing experience
- ✓ Obtain a High School Diploma/GED Equivalent
- ✓ Pass a Criminal Background Check
- ✓ Pass a Pre-Employment Drug Screening
- ✓ Meet established CRTA and Dexterity testing scores
- ✓ Posse good work and personal references
- Attend an Informal Orientation prior to a formal orientation

**TOTS pledges to loyal dedication to provide the best and most qualified applicants in the marketplace.**

## ADDENDUM C

Pricing/Fees:

| | **Pay Rate** | **Bill Rate** |
|---|---|---|
| | $7.00 | $9.73 |
| | $8.00 | $11.12 |
| | $9.00 | $12.51 |

Overtime Rate:

| | **Pay Rate** | **Bill Rate** |
|---|---|---|
| | $10.50 | $14.60 |
| | $12.00 | $16.68 |
| | $13.50 | $18.76 |

___Maytag___  will be invoiced for Day Shift service rendered 52 weeks per year.

___Maytag___  will be invoiced for Night Shift services rendered 48 weeks per year.

## ADDENDUM D

On a weekly basis, Provider will invoice  __Maytag Corporation Jackson, TN__ , the total
Number of hours per employee.  Invoice format will be mutually agreed upon and sent to:

> **Maytag Corporation**
> **Attention: Sherrona Taylor**
> **Address:  2500 Dr. F.E. Wright Dr.**
> **Jackson, TN. 38305**

 __Maytag__   will make best faith efforts to remit full payment to Provider within 30 days from
receipt of invoice.

### Provider Remittance Address

**Temp Owned Temporary Service**
**(TOTS)**

**Address:  107 Southwind**
**Jackson, TN 38305**



UNITED STATES POSTAGE
$ 07.770
02 1A
0004529321         AUG 06 2013
MAILED FROM ZIP CODE 37243

7011 2000 0002 2539 0282

Bu⌐
Tre Ha

**State of Tennessee**
312 Rosa L. Parks Avenue, 6th Floor
Nashville, Tennessee 37243-1102

CFD WHIRLPOOL
2711 CENTERVILLE RD
WILLINGTON, DE 19808